**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

TCS Holdings, Inc.,                                    Civil No. 07-1200 (DWF/AJB)

          Plaintiff,

v.                                                  **MEMORANDUM
OPINION AND ORDER**

Onvoy, Inc.,

          Defendant.

_____

Robert E. Kuderer, Esq., and Stacey A. Molde, Esq., Johnson & Condon, PA, counsel for Plaintiff.

Eric J. Nystrom, Esq., Lindquist & Vennum PLLP, counsel for Defendant.

_____

## INTRODUCTION

The above-entitled matter is before the Court pursuant to a Motion to Dismiss brought by Defendant Onvoy, Inc. ("Onvoy"). For the reasons stated below, the Court denies the motion.

## BACKGROUND

Total Communications Services, Inc., ("Total"), aggregates long-distance telephone traffic to be terminated and transferred to other carriers. On September 12, 2001, Total and Onvoy entered into a Telecommunications Services Agreement (the "Agreement") pursuant to which Total and underlying carriers selected by Total, including MCI WorldCom Network Services, Inc. ("MCI"), provided telecommunications services to Onvoy and its customers. Pursuant to federal law, MCI

and other underlying carriers are obligated to pay access charges to Onvoy. Under the terms of the Agreement, TCS had no obligation—either directly or as a surety—to pay MCI's access charges. Total assigned its rights under the Agreement to TCS Holdings, Inc. ("TCS").

TCS and Onvoy amended the Agreement twice—in the First Amendment to Telecommunications Services Agreement dated April 1, 2002, and then in the Telecommunications Services Agreement dated March 1, 2003 (the "Second Amended Agreement"). This case arises out of the Second Amended Agreement. The Chief Executive Officer of TCS, David Hattman, negotiated the Second Amended Agreement with Onvoy in late 2002. In particular, on September 24, 2002, Hattman met with John Cerwick of Onvoy to discuss amending the Agreement. The next day, Cerwick sent Hattman an e-mail that attached a draft of the proposed Second Amended Agreement dated September 20, 2002 (the "September 20, 2002 Draft"). After reading the September 20, 2002 Draft, Hattman called Cerwick and approved the Second Amended Agreement.

On January 15, 2003, Hattman met Cerwick who had prepared two copies of the Second Amended Agreement with an effective date of February 1, 2003. Hattman signed the two copies and left them for Cerwick to be countersigned by an authorized representative of Onvoy. Cerwick, however, called Hattman two weeks later and said that Onvoy had decided timing was not right to sign the Second Amended Agreement. Instead, Cerwick requested that Hattman sign the Second Amended Agreement again, with a new effective date of March 1, 2003.

Cerwick did not propose any substantive changes to the agreement or mention any new terms to Hattman. Cerwick then sent Hattman an "executable copy" of the Second Amended Agreement. (Decl. of David Hattman ("Hattman Decl.") ¶ 5.) Hattman signed the Second Amended Agreement, believing that it was identical to the September 20, 2002 Draft and the copy Hattman signed on January 15, 2003, with the exception that the effective date was a month later. TCS discovered later, however, that the Second Amended Agreement that Hattman signed contained the following italicized language:

> TCS's underlying carrier, or TCS in the event that the underlying carrier cannot meet its payment obligations, shall pay all access charges and centralized equal access charges for traffic carried under this contract *and all preceding contracts of the same nature*, including all access charges for both origination and termination. If such charges are not paid by TCS or its underlying carrier, Onvoy shall have the right to offset an equivalent amount of monies due TCS by Onvoy.

(Compl. ¶ 14.) The September 20, 2002 Draft did not contain this italicized language.[1]

As of March 1, 2003, MCI had filed for Chapter 11 bankruptcy. By that time, MCI owed Onvoy $791,737.63 for centralized equal access charges that had accrued under the Agreement. Pursuant to the above italicized language in the Second Amended Agreement, TCS had become a surety for MCI's $791,737.63 debt to Onvoy.

Without notifying TCS, on or around May 2003, Onvoy transferred its entire claim against MCI to Contrarian Capital Management, LLC ("Contrarian"), for thirty percent of its value. TCS contends that Onvoy never demanded that TCS pay MCI's debt prior to selling that debt. On July 1, 2003, TCS sent Onvoy an invoice for $763,989.71. Onvoy

---

[1]   TCS has submitted a copy of the September 20, 2002 Draft in its opposition papers.

offset and deducted $554,216.34 from the invoice—the remaining balance of the $763,989.71 claim that it had transferred to Contrarian. Onvoy then paid TCS $209,773.37 on the July 1, 2003 invoice.

On February 15, 2007, TCS brought this lawsuit, asserting claims for breach of contract (Count I), contract reformation (Count II), and unjust enrichment (Count III) under the Second Amended Agreement. Onvoy now moves the Court to dismiss TCS's claims.

## DISCUSSION

### I. Standard of Review

The Supreme Court recently articulated a new standard for evaluating motions to dismiss in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007). The Supreme Court held that the standard established in *Conley v. Gibson*, 255 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief[,]" has "earned its retirement." *Twombly*, 127 S. Ct. at 1968, 1969. Under *Twombly*, to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974. Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 1964–65.

The new standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."[2] *Id.* at 1965.

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## II. Breach of Contract

To succeed on its breach-of-contract claim, TCS must prove four elements: (1) a valid contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages. *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000) (citing *Briggs Trans. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1974)).

---

[2] Although the parties did not cite *Twombly* in their response memorandum or reply memorandum, which were submitted after the Supreme Court decided *Twombly*, the Court concludes that Onvoy's Motion to Dismiss fails under either the old or new standard.

Even assuming that it had agreed to the contract language at issue, TCS contends that Onvoy breached the Second Amended Agreement when it took an offset from TCS for the same debt it had just sold to Contrarian.  TCS contends that because Onvoy sold its claim against MCI to Contrarian, Onvoy never had an offset to take under the Second Amended Agreement.  TCS asserts that MCI owed Onvoy nothing after Onvoy sold MCI's debt to Contrarian.  In addition, TCS contends that Onvoy also failed to meet all conditions precedent to any offset by denying TCS the right to pay the amount owed by MCI.

In response, Onvoy asserts that it mitigated its damages by selling its claim against MCI to Contrarian.  Onvoy further asserts that it did not transfer its rights against TCS when it sold its claim because the Second Amended Agreement prohibited both parties from assigning their rights.  Specifically, the assignment provision provides:

> Neither party may assign its rights or delegate its duties hereunder without the written consent of the other party, which consent shall not be unreasonably withheld, except that (i) if either party is sold or merged or a majority of the ownership of either party is changed, the acquiring entity shall acquire, together with any other party, the party's rights and duties under this Agreement; and (ii) either party may assign its rights and delegate its duties to any entity which controls or is controlled by, or with which it is under common control.

(Hoff Decl., Ex. 2, ¶ 8.)

Viewing the facts in the light most favorable to TCS, the Court finds that TCS's breach-of-contract claim should not be dismissed for failure to state a claim.  Here, TCS alleges that Onvoy breached the Second Amended Agreement when it took an offset from TCS for the same debt it had just sold to Contrarian.  Although the assignment

clause in the Second Amended Agreement prohibits the parties from assigning their rights or delegating their duties under the contract without the written consent of the other party, Onvoy has not cited any authority that the assignment provision means it retains its right to offset against TCS after selling its claim against MCI to Contrarian. In addition, TCS contends that it was required to pay the amount owed by MCI, but was foreclosed from fulfilling this obligation when TCS sold the debt to Contrarian with notifying TCS.

Accordingly, the Court denies Onvoy's Motion to Dismiss TCS's breach-of-contract claim.

### III. Reformation

A court may reform a contract if the moving party proves by "clear and consistent, unequivocal and convincing" evidence that: "(1) there was a valid agreement between the parties expressing their real intentions, (2) the written instrument failed to express the real intentions of the parties, and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party." *Manderfeld v. Krovitz*, 539 N.W.2d 802, 805 (Minn. Ct. App. 1995) (quoting *Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn. 1980)). The district court has discretion as to whether to reform a contract. *See In re Estate of Savich*, 671 N.W.2d 746, 751 (Minn. Ct. App. 2003).

Onvoy does not dispute TCS's claims that there was a valid agreement between the parties expressing their real intentions and that the written instrument failed to express the real intentions of the parties. Rather, Onvoy contends that TCS cannot establish that it made a unilateral mistake or that Onvoy engaged in fraud or inequitable

conduct. Onvoy cites *Nichols*, 294 N.W.2d at 734, for the proposition that Minnesota law does not permit a party to rely on an alleged oral representation that is contrary to the unambiguous language of the parties' written contract. Onvoy points out that Hattman initialed each page of the Second Amended Agreement in addition to signing the final page and therefore asserts that there is no merit to TCS's claim that Onvoy inserted language into the Second Amended Agreement without TCS's knowledge. Accordingly, Onvoy contends that TCS cannot establish any fraudulent or inequitable conduct.[3]

Viewing the evidence in the light most favorable to TCS, the Court finds that TCS's reformation claim should not be dismissed for failure to state a claim. Here, TCS contends that Onvoy represented that the final "executable copy" of the Second Amended Agreement was identical to the September 20, 2002 Draft that Onvoy sent TCS, such draft which did not contain the language ultimately included in the Second Amended Agreement. Therefore, TCS alleges that it mistakenly believed it was signing the Second Amended Agreement that it had approved a few months earlier. Based on these allegations, TCS has sufficiently stated that Onvoy engaged in fraud or inequitable conduct.

---

[3] In addition, Onvoy alleges that before TCS signed the Second Amended Agreement, it provided TCS with a draft of that agreement dated September 20, 2002 (the "Version II September 20 Draft"), which contained in bold-face type the phrase, "and all preceding contracts of the same nature." (Decl. of Michael J. Hoff ("Hoff Decl."), Ex. 3.) Onvoy submits a copy of the Version II September 20 Draft and asserts that this evidence destroys TCS's claims of unilateral mistake and fraud or inequitable conduct. To the extent that this argument and Onvoy's submission convert Onvoy's motion into one for summary judgment as TCS asserts, a genuine issue of material fact would preclude the Court from granting summary judgment. Here, Hattman denies ever receiving the Version II September 20 Draft.

Furthermore, Onvoy's reliance on *Nichols* is misplaced because that case is factually distinguishable. In *Nichols*, the parties met and each left with a different understanding of to what they had agreed. 294 N.W.2d at 733. The defendant bank's understanding of the agreement was that it was giving the plaintiffs a loan in return for a $30,000 second mortgage. *Id.* But the plaintiffs' understanding of the agreement was that the second mortgage was only $10,000. *Id.* The defendant bank drew up a note and mortgage for $30,000. *Id.* The plaintiffs came to the bank about one week after the parties' meeting and signed six documents that set out that the mortgage was for $30,000. *Id.* at 733–34. The plaintiffs indicated that they did not read the documents and instead relied on their understanding of the agreement reached at the parties' meeting that the mortgage would be for $10,000. *Id.* at 734.

The district court reformed the mortgage and, on appeal, the plaintiffs asserted that the reformation was justified because of a mutual mistake of fact. *Id.* The Minnesota Supreme Court held that there was no evidence to support the reformation either under a theory of mutual mistake or unilateral mistake coupled with fraud, misrepresentation, or inequitable conduct. *Id.* With regard to the second theory, the court held that there was no evidence of fraud because "Plaintiff was not told by [the defendant] when he signed the documents that they were for $10,000." *Id.* In fact, the plaintiff testified that the defendant said nothing about the amount of the mortgage. *Id.* Furthermore, the court went on to say that "had plaintiffs read the documents before they signed them, their mistake as to the contents would have been discovered before they suffered any harm." *Id.*

9

In contrast with the plaintiffs in *Nichols*, the Plaintiff here has asserted a reformation claim under the theory of a unilateral mistake coupled with fraud or inequitable conduct—not under a theory of mutual mistake.  Here, Plaintiff has alleged that Onvoy engaged in fraud by misrepresenting that the "executable copy" of the Second Amended Agreement was identical to the September 20, 2002 Draft except that the two had different effective dates.  Therefore, although Hattman initialed each page of the Second Amended Agreement, he was under the mistaken belief that he was signing a copy identical in all material respects to the September 20, 2002 Draft that he had reviewed and actually signed on January 15, 2003.  Accordingly, the Court denies Onvoy's motion to dismiss TCS's reformation claim.

**IV.   Unjust Enrichment**

To establish a cause of action for unjust enrichment, it must be shown that a party has "knowingly received something of value, not being entitled to the benefit, and under circumstances that would make it unjust to permit its retention." *Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992).  Onvoy cites *U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn.1981), for the proposition that a party cannot recover on a claim for unjust enrichment if such claim is based on a breach of an express contract.  TCS does not dispute that, ultimately, it is not permitted to bring an unjust enrichment claim if an express contract governs the parties' relationship.  Rather, TCS has alleged a claim for unjust enrichment as an alternative theory in the event that the Court determines that the Second Amended Agreement is invalid.

Here, the parties dispute the validity of the Second Amended Agreement. TCS essentially argues that there was no meeting of the minds on a material term of the Second Amended Agreement due to Onvoy's alleged fraud or inequitable conduct. Thus, Onvoy's request to dismiss TCS's unjust-enrichment claim is premature because the Court may, at a later date, dismiss the contract action by finding the Second Amended Agreement invalid. *See, e.g., Pinnacle Pizza Co. v. Little Caesar Enters., Inc.*, 395 F. Supp. 2d 891, 903 (D.S.D. 2005) (denying the defendant's motion for judgment on the pleadings and allowing unjust-enrichment claim to proceed because the dispute may not have been governed by the parties' contract).

## ORDER

For the reasons stated, **IT IS HEREBY ORDERED** that:

1. Onvoy's Motion to Dismiss (Doc. No. 2) is **DENIED**.

Dated: August 1, 2007            s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 Judge of United States District Court